LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 W. 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiffs and FLSA Collective Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

BARBARA ELIAAS, SHAHAB CHOWDHURY, MANG
WING WONG, JORGE VELASQUEZ, SULTAN
AHMED, KAITY CHAN-ROMAN, PRIMITIVO
FLORES, CARLOS SOTO, DAVID RIVAS, EDGAR
MONTES, EFREN PEREZ, GABRIEL PUCHA,
GIOVANNI LUJAN, HECTOR SIGUENCIA, JULIO
RODRIGUEZ, LUIS PANURA, NICHOLAS GRINGAS,
PORFIRIO SUAREZ, ZAKIR HOSSAIN, CARLOS
CRUZ, ERIK MEDINA, FABIO LOZANO, JHONNY
NAVARRA, JOSE PERALTA, JULIO PINA, and
RAFAEL ESTRELLA, *on behalf of themselves, FLSA
Collective Plaintiffs and the Class*

Plaintiffs,

v.

THE DINEX GROUP, LLC,
44TH STREET RESTAURANT, LLC,
     d/b/a DB BISTRO MODERNE
BOWERY RESTAURANT, LLC,
     d/b/a DBGB KITCHEN AND BAR
58TH STREET CAFÉ, LLC,
     d/b/a EPICERIE BOULUD
64 WEST RESTAURANT, LLC,
     d/b/a BAR BOULUD
65TH STREET RESTAURANT, LLC,
     d/b/a DANIEL

Case No:

**CLASS AND
COLLECTIVE ACTION
COMPLAINT**

Jury Trial Demanded

d/b/a THE BAR AT DANIEL
76TH STREET RESTAURANT, LLC,
d/b/a CAFÉ BOULUD
d/b/a BAR PLEIADES
GREENWICH STREET CAFÉ, LLC
d/b/a EPICERIE BOULUD
and DANIEL BOULUD,

Defendants.

_____

BARBARA ELIAAS, SHAHAB CHOWDHURY, MANG WING WONG, JORGE VELASQUEZ, SULTAN AHMED, KAITY CHAN-ROMAN, PRIMITIVO FLORES, CARLOS SOTO, DAVID RIVAS, EDGAR MONTES, EFREN PEREZ, GABRIEL PUCHA, GIOVANNI LUJAN, HECTOR SIGUENCIA, JULIO RODRIGUEZ, LUIS PANURA, NICHOLAS GRINGAS, PORFIRIO SUAREZ, ZAKIR HOSSAIN, CARLOS CRUZ, ERIK MEDINA, FABIO LOZANO, JHONNY NAVARRA, JOSE PERALTA, JULIO PINA, and RAFAEL ESTRELLA (collectively "Plaintiffs"), bring this Class and Collective Action Complaint on behalf of themselves and all other similarly situated individuals to recover unpaid wages and other damages from Defendants THE DINEX GROUP, LLC, 44TH STREET RESTAURANT, LLC d/b/a DB BISTRO MODERNE, BOWERY RESTAURANT, LLC d/b/a DBGB KITCHEN AND BAR, 58TH STREET CAFÉ, LLC d/b/a EPICERIE BOULUD, 64 WEST RESTAURANT, LLC d/b/a BAR BOULUD, 65TH STREET RESTAURANT, LLC d/b/a DANIEL and d/b/a THE BAR AT DANIEL, 76TH STREET RESTAURANT, LLC d/b/a CAFÉ BOULUD and d/b/a BAR PLEIADES, GREENWICH STREET CAFÉ, LLC d/b/a EPICERIE BOULUD (collectively, "Corporate Defendants"), and DANIEL BOULUD ("Individual Defendant" and collectively with the Corporate Defendants, "Defendants") and states as follows:

## INTRODUCTION

1.          Plaintiffs allege, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C.

§§201 *et. seq.* ("FLSA"), that they and others similarly situated are entitled to recover from

Defendants: (1) unpaid wages due to invalid tip credit, (2) unpaid wages due to time-shaving, (3)

tips unlawfully retained by Defendants, (4) damages from improperly deducted meal credits (5)

liquidated damages and (6) attorneys' fees and costs.

2.          Plaintiffs further allege that, pursuant to the New York Labor Law ("NYLL"), they

are entitled to recover from Defendants: (1) unpaid wages due to invalid tip credit, (2) unpaid

wages due to time-shaving. (3) unpaid spread of hours premiums, (4) tips unlawfully retained by

Defendants, (5) damages from improperly deducted meal credits, (6) liquidated damages, (7)

statutory penalties and (8) attorneys' fees and costs.

3.          At this time, certain Plaintiffs are subject to statute of limitations issues and certain

Plaintiffs, to be identified, may be subject to arbitration agreements. However, due to the Governor

of New York tolling New York State claims until April 19, 2020 because of COVID-19, this

complaint was required to be filed to ensure compliance with the statute of limitations.

## JURISDICTION AND VENUE

4.          This Court has jurisdiction over this controversy pursuant to 29 U.S.C. §216(b), 28

U.S.C. §§1331, 1337 and 1343 and has supplemental jurisdiction over Plaintiff's state law claims

pursuant to 28 U.S.C. §1367.

5.          Venue is proper in the Southern District pursuant to 28 U.S.C. §1391.

## PARTIES

6.          Plaintiff, BARBARA ELIAAS, is a resident of New York County, New York.

7.          Plaintiff, SHAHAB CHODHURY, is a resident of Queens County, New York.

8.      Plaintiff, MANG WING WONG, is a resident of Queens County, New York.

9.      Plaintiff, JORGE VELASQUEZ, is a resident of Queens County, New York.

10.     Plaintiff, SULTAN AHMED, is a resident of Queens County, New York.

11.     Plaintiff, KAITY CHAN-ROMAN, is a resident of Queens County, New York.

12.     Plaintiff, PRIMITIVO FLORES, is a resident of Queens County, New York.

13.     Plaintiff, CARLOS SOTO, is a resident of Queens County, New York.

14.     Plaintiff, DAVID RIVAS, is a resident of Queens County, New York.

15.     Plaintiff, EDGAR MONTES, is a resident of Queens County, New York.

16.     Plaintiff, EFREN PEREZ, is a resident of Queens County, New York.

17.     Plaintiff, GABRIEL PUCHA, is a resident of Queens County, New York.

18.     Plaintiff, GIOVANNI LUJAN, is a resident of Queens County, New York.

19.     Plaintiff, HECTOR SIGUENCIA, is a resident of New York County, New York.

20.     Plaintiff, JULIO RODRIGUEZ, is a resident of New York County, New York.

21.     Plaintiff, LUIS PANURA, is a resident of Queens County, New York.

22.     Plaintiff, NICHOLAS BRIHGAS, is a resident of Queens County, New York

23.     Plaintiff, PORFIRIO SUAREZ, is a resident of Queens County, New York.

24.     Plaintiff, ZAKIR HOSSAIN, is a resident of Queens County, New York.

25.     Plaintiff, CARLOS CRUZ, is a resident of Queens County, New York.

26.     Plaintiff, ERIK MEDINA, is a resident of New York County, New York

27.     Plaintiff, FABIO LOZANO, is a resident of Clark County, Nevada.

28.     Plaintiff, JHONNY NAVARRA, is a resident of Bronx County, New York.

29.     Plaintiff, JOSE PERALTA, is a resident of Bronx County, New York.

30.     Plaintiff, JULIO PINA, is a resident of New York County, New York.

31.    Plaintiff, RAFAEL ESTRELLA, is a resident of Wake County, North Carolina.

32.    Defendants operate ten (10) restaurants and bars in New York State as a single integrated enterprise. Defendants' "DBGB Kitchen and Bar" closed in September 2017. The locations of the restaurants and bars are:

a.   60 E 65th Street, New York, NY 10065 ("DANIEL");

b.   60 E 65th Street, New York, NY 10065 ("THE BAR AT DANIEL");

c.   1900 W Broadway, New York, NY 10023 ("BAR BOULUD");

d.   20 W 64th Street, New York, NY 10023 ("BOULUD SUD");

e.   20 E 76th Street, New York, NY 10021 ("CAFÉ BOULUD");

f.   20 E 76th Street, New York, NY 10021 ("BAR PLEIADES");

g.   55 West 44th Street, New York, NY 10036 ("DB BISTRO MODERNE");

h.   1900 Broadway, New York, NY 10023 ("ÉPICERIE BOULUD AT LINCOLN CENTER");

i.   1 West 59th Street, New York, NY 10019 ("ÉPICERIE BOULUD AT THE PLAZA FOOD HALL");

j.   185 Greenwich Street, LL 4000, New York, NY 10007 ("ÉPICERIE BOULUD AT WORLD TRADE CENTER OCULUS")

k.   299 Bowery, New York, NY 10002 ("DBGB Kitchen and Bar");

Collectively the "Restaurants."

33.    Corporate Defendants operate as a single integrated enterprise. Specifically, all of Corporate Defendants' Restaurants are engaged in related activities, share common membership and have a common business purpose.

a.  All the Restaurants are commonly owned and operated by the Individual Defendant and by the Corporate Defendants. In terms of history, Individual Defendant DANIEL BOULUD has founded, owned, and operated the Restaurants over the course of seventeen (17) years from 1993 to 2020. *See* **Exhibit B** for a history of Individual Defendant DANIEL BOULUD's opening of the Restaurants, found on https://www.danielboulud.com/about/daniel-boulud. Prior to opening, all new Restaurants had to be approved by the Individual Defendant, DANIEL BOULUD.

b.  All the Restaurants share the same brand name of Individual Defendant DANIEL BOULUD, who is the celebrated chef and owner of all the Restaurants, and are marketed jointly on one (1) common website: https://www.danielboulud.com/ ("Website").

c.  All the Restaurants are fully listed and jointly advertised on the Website at https://www.danielboulud.com/restaurants/new-york-city. *See* **Exhibit C** for the list of Defendants' Restaurants in New York City, showing all ten (10) of the Restaurants. When each of the Restaurants' names is clicked on the Website, the location and hours of operation are clearly exhibited.

d.  All the Restaurants use a central marketing department, run by the Chief Executive Officer, Sebastien Silvestri. *See* **Exhibit D** for the CEO's recognized history of marketing and branding tactics that are being used for all the Restaurants.

e.  All the Restaurants use a central financial department, run by the Chief Financial Officer, Brian Diamond. *See* **Exhibit E** for the CFO's recognized history of financial operations expertise that is being utilized for all the Restaurants.

f.  All the Restaurants use a central operations department, run by the Chief Operational Officer, Michael Lawrence. *See* **Exhibit F** for the COO's recognized history of operational expertise that is "responsible for overseeing all of Daniel Boulud's restaurants" (emphasis added).

g.  All the Restaurants receive legal advice from the General Counsel of Corporate Defendants, who oversees legal compliance for all the Restaurants. *See* **Exhibit G** for the same terms of use and privacy policy for all the Restaurants.

h.  All the Restaurants use a central human resources department, run by the Director of Human Resources, Kristen Diver. All paychecks of Restaurant employees are issued through the human resources department. *See* **Exhibit H** for Kristen Diver's recognized history of human resources expertise. She oversees all policies and issues related to human resources of all the Restaurants.

i.  All the Restaurants share the same Careers engine on the Website, showing whether there is a job posting at any of the Restaurants. *See* **Exhibit I** for the Careers webpage on the Website, containing the list of all Restaurants in which applicants may apply for a position.

j.  All the Restaurants share the same Executive Team, which oversees the Restaurants together. *See* **Exhibit J** for a brief career background of each of the executive team members.

k.  All the Restaurants share a common "Contact Us" webpage on the Website, where all the ten (10) locations are listed. On the same webpage, all the Restaurants share one (1) common form where questions can be submitted about any of the ten (10) Restaurants. *See* **Exhibit K** for the "Contact Us" webpage on the Website.

l.  All the Restaurants share a common "Subscribe" webpage on the Website, where all the ten (10) locations are listed. On the same webpage, all the Restaurants share one (1) common form where customers can subscribe to the marketing materials sent by any of the ten (10) Restaurants. ***See* Exhibit L** for the "Subscribe" webpage on the Website.

m.  All the Restaurants share a common look and feel that has been inspired by the Individual Defendant DANIEL BOULUD. All the Restaurants' menus are accessible by clicking on each of the Restaurants on the Website. ***See* Exhibit M** for the Individual Defendant DANIEL BOULUD's recipes that share his similar inspirations for the dishes in all the Restaurants.

n.  Some of the Restaurants offer their venues for private parties and events on the common Website. ***See* Exhibit N** for the Restaurants that offer private dining.

o.  All the Restaurants share one (1) common form on the Website for making reservations at any of the Restaurants. ***See* Exhibit O** for the common reservations form.

p.  All the Restaurants are jointly advertised through the brand name of Individual Defendant DANIEL BOULUD on his Facebook, Twitter, Instagram, and other social media accounts. ***See* Exhibit P** for screenshots of his Facebook and Twitter accounts.

q.  All the Restaurants share one (1) joint policy for dealing with the COVID-19 pandemic in 2020. ***See* Exhibit Q** for the common policy.

r.  The Restaurants regularly share and exchange non-exempt employees, who are interchangeable among the Restaurants. Defendants require employees to work at Restaurant locations different from their primary place of employment on special occasions (e.g., parties or private events) whenever one (1) location is short-staffed.

Defendants, on occasion, transfer employees between different locations based on their own business needs.

s.   Employees were regularly required to transport items between Restaurant locations, in accordance with the directives of central management, including the Individual Defendant, DANIEL BOULUD.

t.   Tipped workers at the Restaurants perform same basic job duties and subject to the same employment policies and practices.

u.   Plaintiffs allege that the same unlawful wage and hour policies were present at each restaurant location.

34.   The Corporate Defendants are:

(a)   THE DINEX GROUP, LLC is a domestic limited liability company organized under the laws of the State of New York with an address for service of process located at 16 East 40th Street, New York, NY 10016. THE DINEX GROUP, LLC is the principal of other Corporate Defendants;

(b)   44TH STREET RESTAURANT, LLC d/b/a DB BISTRO MODERNE, is a domestic limited liability company organized under the laws of the State of New York with a principal place of business located at 55 West 44th Street, New York, NY 10036, and an address for service of process c/o The Dinex Group, 16 East 40th Street, New York, NY 10016. 44TH STREET RESTAURANT, LLC controls and operates the restaurant "DB BISTRO MODERNE" in New York City;

(c)   BOWERY RESTAURANT, d/b/a DBGB Kitchen and Bar was a domestic limited liability company organized under the laws of the State of New York, with a principal place of business located at 299 Bowery, New York, NY 10003, and an

address for service of process c/o The Dinex Group, 16 East 40th Street, New York, NY 10016. BOWERY RESTAURANT LLC was dissolved on January 24, 2018;

(d)      64 WEST RESTAURANT, LLC d/b/a Boulud Sud is a domestic limited liability company organized under the laws of the State of New York, with a principal place of business located at 1900 Broadway, 64th Street, New York, NY 10023, and an address for service of process located at 16 East 40th Street, New York, NY 10016. 64 WEST RESTAURANT, LLC controls and operates the restaurants "BOULUD SUD" and "BAR BOULUD" in New York City;

(e)      65TH STREET RESTAURANT, LLC d/b/a DANIEL is a domestic limited liability company organized under the laws of the State of New York with a principal place of business located at 60 E. 65th Street, New York, NY 10065, and an address for service of process located at 16 East 40th Street, New York, NY 10016. 65TH STREET RESTAURANT, LLC controls and operates the restaurants "DANIEL" and "THE BAR AT DANIEL" in New York City;

(f)      76TH STREET RESTAURANT, LLC d/b/a CAFÉ BOULUD is a domestic limited liability company organized under the laws of the State of New York with a principal place of business located at 20 East 76th Street, New York, 10021, and an address for service of process c/o The Dinex Group, Attn: Chief Financial Officer, 16 East 40th Street, New York, NY 10016. 76TH STREET RESTAURANT, LLC controls and operates the restaurants "CAFÉ BOULUD" and "BAR PLEIADES" in New York City;

(g)      58TH STREET CAFÉ, LLC d/b/a EPICERIE BOULUD is a domestic limited liability company organized under the laws of the State of New York, with a

principal place of business located at 1 W 59th Street, New York, NY 10019, and an address for service of process c/o The Dinex Group, 16 East 40th Street, New York, NY 10016.

(h)     GREENWICH STREET CAFÉ, LLC d/b/a EPICERIE BOULUD is a domestic limited liability company organized under the laws of the State of New York with a principal place of business located at 185 Greenwich Street, LL 4000, New York, NY 10007, and an address for service of process c/o The Dinex Group, 16 East 40th Street, New York, NY 10016.

35.     Defendant DANIEL BOULUD is the owner of all Corporate Defendants. DANIEL BOULUD exercises operational control as it relates to all employees including Plaintiffs and FLSA Collective Plaintiffs. He exercises the power to (and also delegates to managers and supervisors the power to) fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiff and FLSA Collective Plaintiffs at each of the restaurant locations. DANIEL BOULUD additionally has the power to fire and hire, supervise and control work schedules and conditions of employment, and determine rate and method of pay of managerial employees who directly supervise Plaintiff and FLSA Collective Plaintiffs. DANIEL BOULUD exercises functional control over the business and financial operations of all Corporate Defendants. He ensures that employees properly prepare food and effectively serve and cater to customers to ensure that the Restaurants are operating efficiently and profitably.

36.     At all relevant times, Defendants were and continue to be an "enterprise engaged in commerce" within the meaning of the FLSA.

37.     At all relevant times, the work performed by Plaintiffs was directly essential to the business operated by Defendants.

38.     At all relevant times, Defendants employed at least eleven (11) employees as defined under the NYLL.

## FLSA COLLECTIVE ACTION ALLEGATIONS

39.     Plaintiffs bring claims for relief as a collective action pursuant to FLSA §16(b), 29 U.S.C. § 216(b), on behalf of all non-exempt employees employed by Defendants on or after the date that is six (6) years before the filing of the Complaint in this case as defined herein ("FLSA Collective Plaintiffs").

40.     At all relevant times, Plaintiff and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them for all hours worked, and for taking improper meal credits. The claims of Plaintiffs stated herein are essentially the same as those of the other FLSA Collective Plaintiffs.

41.     Furthermore, Plaintiffs and a subclass of all FLSA Collective Plaintiffs who were tipped employees also suffered as a result of Defendants' failure to pay them the proper wage. Defendants were not entitled to deduct any tip credits from the wages earned by Plaintiffs and a subclass of FLSA Collective Plaintiffs because they failed to satisfy all FLSA requirements for taking a tip credit. Specifically, Defendants (i) failed to properly provide tip credit notice in violation of the FLSA; (ii) failed to inform them that the tip credit claimed by Defendants cannot exceed the amount of tips actually received by them in violation of the FLSA; (iii) failed to inform that all tips received by them are to be retained by them except pursuant to a valid tip pooling

arrangement in violation of the FLSA, (iv) failed to inform that tip credit will not apply unless they have been informed of the foregoing tip credit notice requirement in violation of the FLSA, (v) claimed tip credit for all hours worked despite having caused tipped employees to engage in non-tipped duties for hours exceeding 20% of the total hours worked each workweek in violation of the FLSA, and (vi) failed to accurately track daily tips earned or maintain records thereof.

42.     The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to §16(b) of the FLSA, 29 U.S.C. 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from the Defendants. Notice can be provided to the FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS – NEW YORK

43.     Plaintiffs bring claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all current and former non-exempt employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class Period").

44.     All said persons, including Plaintiffs, are referred to herein as the "Class." The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class member may also be determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

45.     The proposed Class is so numerous such that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

Although the precise number of such persons is unknown because the facts on which the calculation of that number rests presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class. The Class further includes a subclass of tipped employees ("Tipped Subclass") who also number more than forty (40). Plaintiffs are members of both the Class and the Tipped Subclass.

46.     Plaintiffs' claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief, that would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendants, as alleged herein, of (i) failing to pay proper wages due to time-shaving, (ii) failing to pay spread of hours premiums, (iii) failing to provide Class members with proper wage statements with every payment of wages, and (iv) failing to properly provide notices to Class members, at date of hiring and annually, per requirements of the NYLL.

47.     With regard to Plaintiffs and the Tipped Subclass, Defendants also failed to pay them the proper minimum wage and overtime because defendants were not entitled to claim any tip credit because they failed to meet statutory requirements under the New York Labor Law. The Tipped Subclass suffered from Defendants' failure to pay minimum wage and their proper overtime due to Defendants' invalid tip credit allowance because Defendants (i) failed to properly provide tip credit notice at hiring and annually thereafter, (ii) failed to accurately keep track of daily tips earned and maintain records thereof, (iii) instituted a policy of requiring Tipped Subclass members to spend two (2) hours or twenty percent (20%) of each shift engaged in non-tipped activities, (iv) instituted a tip pooling scheme without consent of tipped employees, whereby non-tipped and managerial employees participated in the tip pool, and (v) failed to provide proper wage statements clearly indicating tip credit allowance for each payment period

48.     Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiffs and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

49.     Plaintiffs are able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation, and have previously represented plaintiffs in wage and hour cases.

50.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for

Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

51.     Defendants and other employers throughout the state violate the NYLL. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

52.     There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a)   Whether Defendants employed Plaintiffs and the Class members within the meaning of the New York law;

b)   What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not pay the Class members properly;

c)   At what common rate, or rates subject to common methods of calculation, was and are Defendants required to pay the Class members for their work;

d)   Whether Defendants properly compensated Plaintiffs and Class members for all hours worked;

e) Whether Defendants caused time-shaving by paying Plaintiffs and Class members only for those hours which they were scheduled to work, rather than for the actual hours that they worked, including hours over forty (40);

f) Whether Defendants properly compensated Plaintiffs and Class members their spread of hours premium when working days in excess of ten (10) hours;

g) Whether Defendants required Plaintiffs and Tipped Subclass members to perform non-tipped work for more than two (2) hours, or twenty percent (20%) of each shift;

h) Whether Defendants established the tip payment structure for Plaintiffs and the Tipped Subclass without the agreement or consent of the members;

i) Whether Defendants mandated an unlawful tip-pooling scheme whereby Plaintiffs and the Tipped Subclass members were required to share tips earned with non-tipped employees;

j) Whether Defendants provided Plaintiffs and the Tipped Subclass members proper notice for their claimed tip credit;

k) Whether Defendants accurately tracked the amount of tips earned each day and maintained records thereof;

l) Whether Defendants provided proper wage statements informing (i) tipped employees of the amount of tip credit taken for each payment period, and (ii) all non-exempt employees of information required to be provided on wage statements under the New York Labor Law;

m) Whether Defendants provided proper wage notice, at date of hiring and annually thereafter, to all non-exempt employees per requirements of the New York Labor Law; and

n)   Whether Defendants properly claimed a meal credit when their food was inedible and did not satisfy the meal requirements under the New York Labor Law.

## STATEMENT OF FACTS

53.     Factual claims specific to each Plaintiff is attached hereto as **Exhibit A**.

54.     At all relevant times, Plaintiffs, a subclass of FLSA Collective Plaintiffs and the Tipped Subclass were paid below the minimum wage at an invalid "tip credit" minimum wage. With respect to Plaintiffs, a subclass of FLSA Collective Plaintiffs and the Tipped Subclass, Defendants were not entitled to claim any tip credit allowance under the FLSA or NYLL because Defendants (i) failed to properly provide tip credit notice in violation of the FLSA; (ii) failed to inform them that the tip credit claimed by Defendants cannot exceed the amount of tips actually received by them in violation of the FLSA; (iii) failed to inform that all tips received by them are to be retained by them except pursuant to a valid tip pooling arrangement in violation of the FLSA; (iv) failed to inform that tip credit will not apply unless they have been informed of the foregoing tip credit notice requirement in violation of the FLSA, (v) claimed tip credit for all hours worked despite having caused tipped employees to engage in non-tipped duties for hours exceeding 20% of the total hours worked each workweek in violation of the FLSA and NYLL, (vi) failed to accurately track daily tips earned or maintain records thereof, (vii) failed to properly provide tip credit notice at hiring and annually thereafter in violation of the NYLL, and (viii) failed to provide a proper wage statement with every payment of wages informing tipped employees of the amount of tip credit deducted for each payment period, in violation of the NYLL.

55.     In addition to performing tipped duties, Plaintiffs, a subclass of FLSA Collective Plaintiffs and the Tipped Subclass were required to engage more than 20% of their working time performing substantial non-tipped activities including setting up the dining area, setting up the

food stations in the kitchen, bringing up drinks from the basement, cleaning placemats, setting up the outside dining area, cleaning the bathrooms, mopping floors, polishing silverware, and cleaning windows.  In addition, Plaintiffs who worked at "Café Boulud" were required to bring food to the hotel in the same building the restaurant was located. The food would be delivered by Plaintiffs to a room service area in the basement, and then delivered to hotel guest rooms by hotel employees. "Café Boulud" Plaintiffs did not receive any tips for food brought to the hotel, despite spending substantial amounts of time making such deliveries to the room service area. Plaintiffs at all restaurant locations would all spend well in excess of twenty (20%) percent of their workdays performing non-tipped activities. Based on Plaintiffs' direct observations and conversations with other employees, the subclass of FLSA Collective Plaintiffs members similarly spent at least twenty (20%) percent of their workday performing such non-tipped activities.

56.    At all relevant times, Defendants unlawfully retained Plaintiffs gratuities by subjecting Plaintiffs to a tip pooling scheme where non-tipped and managerial employees participated and took a percentage of the pooled tips.

57.    At all relevant times, Defendants unlawfully failed to pay Plaintiffs, FLSA Collective Plaintiffs and Class members for all hours worked each workweek, due to a policy of time-shaving, resulting in unpaid wages and unpaid overtime premiums for hours worked over forty (40).

58.    At all relevant times, Defendants improperly deducted a meal credit from Plaintiffs, FLSA Collective Plaintiffs and Class Members pay. However, on most days Plaintiffs, FLSA Collective Plaintiffs and Class Members were not provided with any meal, nor any time to eat a meal. Any meals that were provided were made up of one or at most two of the four required food groups. Meals provided were also stale leftovers that were not edible.

59.     At all relevant times, Defendants unlawfully failed to pay Plaintiffs and Class Members their spread of hours premium when they worked shifts exceeding ten (10) hours in duration.

60.     At no time during the relevant time periods did Defendants provide Plaintiffs and Class Members with proper wage notices, at the beginning of employment and annually thereafter, as required by the NYLL.

61.     At no time during the relevant time periods did Defendants provide Plaintiffs and Class Members with proper wage statements as required by the NYLL. Plaintiffs received fraudulent wage statements that reflected only their scheduled hours, and not the actual hours worked.

62.     Defendants knowingly and willfully operated their business with a policy of not paying Plaintiffs, a subclass of FLSA Collective Plaintiffs and the Tipped Subclass their lawful wage for all hours worked each workweek due to an invalid tip credit, resulting in unpaid wages.

63.     Defendants knowingly and willfully operated their business with a policy of not paying Plaintiffs , FLSA Collective Plaintiffs and Class Members for all hours worked each workweek, due to a policy of time-shaving, resulting in unpaid wages and unpaid overtime premiums for hours worked over forty (40).

64.     Defendants knowingly and willfully operated their business with a policy of taking an invalid meal credit from Plaintiffs, FLSA Collective Plaintiffs and Class Members.

65.     Defendants knowingly and willfully operated their business with a policy of failing to pay Plaintiffs and Class Members their spread of hours premium when they worked shifts exceeding ten (10) hours in duration, as required by the NYLL.

66.     Defendants knowingly and willfully operated their business with a policy of unlawfully retaining gratuities by subjecting Plaintiffs, a subclass of FLSA Collective Plaintiffs and the Tipped Subclass to a tip pooling scheme where non-tipped and managerial employees participated and took a percentage of the pooled tips in violation of the FLSA and NYLL.

67.     Defendants knowingly and willfully operated their business with a policy of not providing proper wage notices, at the beginning of employment and annually thereafter, pursuant to the requirements of the NYLL.

68.     Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements, as required by the NYLL.

69.     Plaintiffs retained Lee Litigation Group, PLLC to represent Plaintiffs, FLSA Collective Plaintiffs and Class Members, in this litigation and have agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

## COUNT I

## VIOLATION OF THE FAIR LABOR STANDARDS ACT

70.     Plaintiffs reallege and reaver Paragraphs 1 through 69 of this Class and Collective Action Complaint as if fully set forth herein.

71.     At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

72.     At all relevant times, Defendants employed Plaintiffs within the meaning of the FLSA.

73.    At all relevant times, the Corporate Defendants had gross annual revenues in excess of $500,000.

74.    At all relevant times, the Defendants had a policy and practice of refusing to pay overtime compensation at the statutory rate of time and one-half to Plaintiff and FLSA Collective Plaintiffs for their hours worked in excess of forty hours per workweek as is required under the FLSA.

75.    Defendants had a policy and practice of refusing to pay Plaintiff and FLSA Collective Plaintiffs for all their hours worked due to a policy of time-shaving. Defendants willfully violated Plaintiff's and FLSA Collective Plaintiffs' rights by failing to pay them wages in the lawful amount for hours worked.

76.    Defendants had a policy and practice of refusing to pay the statutory minimum wage to Plaintiff and FLSA Collective Plaintiffs due to an invalid tip credit. Defendants willfully violated Plaintiff's and FLSA Collective Plaintiffs' rights by failing to pay them the statutory minimum wage due to an invalid tip credit.

77.    Defendants were not entitled to take any tip credits under the FLSA, because (i) they failed to properly provide notice to all tipped employees that Defendants were taking a tip credit, rendering the tip credit invalid in respect of all tipped employees; and (ii) they retained portions of service charges without giving notice to customers that management was sharing in service charges.

78.    Records, if any, concerning the number of hours worked by Plaintiffs and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiffs and FLSA Collective Plaintiffs should be in the possession and custody of the Defendants. Plaintiffs intend to obtain these records

by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

79.     Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiffs and FLSA Collective Plaintiffs at the statutory rate of time and one-half for their hours worked in excess of forty (40) hours per week when Defendants knew or should have known such was due.

80.     Defendants took an improper meal credit from Plaintiffs and FLSA Collective Plaintiffs wages because on most days they were unable to take meal breaks, and because the meals provided were insufficient.

81.     Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the FLSA.

82.     As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

83.     Due to the intentional, willful and unlawful acts of Defendants, Plaintiffs and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid minimum wages and unpaid overtime wages, plus an equal amount as liquidated damages.

84.     Plaintiffs and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. §216(b).

## COUNT II
## VIOLATION OF THE NEW YORK LABOR LAW

85.     Plaintiffs reallege and reaver Paragraphs 1 through 84 of this Class and Collective Action Complaint as if fully set forth herein.

86.    At all relevant times, Plaintiffs and Class Members were employed by Defendants within the meaning of the NYLL, §§ 2 and 651.

87.    Defendants willfully violated Plaintiffs' and Tipped Subclass members' rights by failing to pay them their proper wages due to an invalid tip credit.

88.    Defendants willfully violated Plaintiffs' and Class Members' rights by failing to pay them wages in the lawful amount for all hours worked due to time-shaving.

89.    Defendants willfully violated Plaintiffs' and Tipped Subclass members' right by implement a policy and practice of illegally retaining gratuities.

90.    Defendants willfully violated Plaintiffs' and Class Members' rights by failing to pay them their spread of hours premium when they worked shifts exceeding ten (10) hours in duration.

91.    Defendants willfully violated Plaintiffs' and Class Members' rights by taking an improper meal credit from Plaintiffs and FLSA Collective Plaintiffs wages because on most days they were unable to take meal breaks, and because the meals provided were insufficient.

92.    Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements as required under the NYLL.

93.    Defendants knowingly and willfully failed to provide proper wage and hour notices to employees at the beginning of employment and annually thereafter pursuant to the requirements of the NYLL.

94.    Due to the Defendants' NYLL violations, Plaintiffs and Class members are entitled to recover from Defendants' unpaid wages due to invalid tip credit, unpaid wages due to time-shaving, unpaid spread of hours premiums, illegally retained gratuities, improperly deducted meal

credits, damages for unreasonably delayed payments, reasonable attorneys' fees, liquidated damages, statutory penalties and costs and disbursements of the action, pursuant to NYLL.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs on behalf of themselves, FLSA Collective Plaintiffs and Class Members, respectfully requests that this Court grant the following relief:

a. A declaratory judgment that the practices complained of herein are unlawful under the FLSA and NYLL;

b. An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c. An award of unpaid wages for all hours worked due to time-shaving due under the FLSA and NYLL;

d. An award of unpaid wages due to an invalid tip credit under the FLSA and NYLL;

e. An award of unpaid spread of hours premium pursuant to the NYLL;

f. An award equal to the amount of the improperly retained tips withheld by Defendants;

g. An award equal to the amount of improperly deducted meal credits withheld by Defendants;

h. An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay overtime compensation and minimum wage pursuant to 29 U.S.C. § 216;

i.   An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay wages for all hours worked pursuant to the NYLL;

j.   An award of prejudgment and postjudgment interest, costs and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties;

k.   Designation of Plaintiff as Representative of the FLSA Collective Plaintiffs; and

l.   Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated: April 17, 2020

Respectfully submitted,

LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 W. 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiffs and FLSA
Collective Plaintiffs*

By: _____ */s/ C.K. Lee* _____
            C.K. Lee, Esq.