UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

BARBARA ELIAAS, JORGE VELASQUEZ,
SULTAN AHMED, SHAHAB CHOWDHURY,
MANG WING WONG, DAVID RIVAS,
EDGAR MONTES, GABRIEL PUCHA,
JULIO RODRIGUEZ, PORFIRIO SUAREZ,
ZAKIR HOSSAIN, CARLOS CRUZ,
ERIK MEDINA, FABIO LOZANO,
JHONNY NAVARRA, and JULIO PINA,
*on behalf of themselves, FLSA Collective Plaintiffs
and the Class,*

Case No: 20-cv-03117

Plaintiffs,

v.

THE DINEX GROUP, LLC,
44TH STREET RESTAURANT, LLC,
    d/b/a DB BISTRO MODERNE
BOWERY RESTAURANT, LLC,
    d/b/a DBGB KITCHEN AND BAR
58TH STREET CAFÉ, LLC,
    d/b/a EPICERIE BOULUD
64 WEST RESTAURANT, LLC,
    d/b/a BAR BOULUD
65TH STREET RESTAURANT, LLC,
    d/b/a DANIEL
    d/b/a THE BAR AT DANIEL
76TH STREET RESTAURANT, LLC,
    d/b/a CAFÉ BOULUD
    d/b/a BAR PLEIADES
GREENWICH STREET CAFÉ, LLC
    d/b/a EPICERIE BOULUD
and DANIEL BOULUD,

Defendants.

---

# SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (the "Agreement") is entered into by and between, on the one hand: DAVID RIVAS, EDGAR MONTES, GABRIEL PUCHA, JULIO RODRIGUEZ, PORFIRIO SUAREZ, ZAKIR HOSSAIN, CARLOS CRUZ, ERIK MEDINA, FABIO LOZANO, JHONNY NAVARRA, and JULIO PINA ("Class Representatives") on behalf of current and former service employees of The Dinex Group, LLC; and, on the other hand, THE DINEX GROUP, LLC, 44TH STREET RESTAURANT, LLC, BOWERY RESTAURANT, LLC, 58TH STREET CAFÉ, LLC, 64 WEST RESTAURANT, LLC, 65TH STREET RESTAURANT, LLC, 76TH STREET RESTAURANT, LLC, GREENWICH STREET CAFÉ, LLC and DANIEL BOULUD (hereinafter "Defendants") (Class Representatives and Defendants collectively referred to as "the Parties").

## RECITALS AND BACKGROUND

WHEREAS, Class Counsel sent Defendants' Counsel a draft complaint on December 2, 2019, on behalf of the Class Representatives and current and former service employees of Defendants, in which claims were asserted against Defendants under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") and the NYLL alleging failure to pay wages, overtime and other monies to Class Representatives and a putative class and collective of current and former service employees who are or were employed by Defendants, and have not executed arbitration agreements with Defendants;

WHEREAS, the Parties participated in a full day mediation on July 8, 2019, with Mediator Stephen P. Sonnenberg, Esq. of JAMS.

WHEREAS, Plaintiffs filed the Complaint on April 17, 2020 in the Southern District of New York, a First Amended Complaint on May 14, 2020, and a Second Amended Complaint on September 29, 2020 (the "Complaint").

WHEREAS, the purpose of this Agreement is to settle, fully and finally, all Released Claims, subject only to Court approval, including but not limited to, claims as asserted in the Complaint;

NOW THEREFORE, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties hereto agree to a full and complete settlement of the Complaint on the following terms and conditions:

**1   DEFINITIONS**

The defined terms set forth in this Agreement have the meanings ascribed to them below.

**1.1   Agreement.** "Agreement" means this Settlement Agreement and Release.

**1.2   RESERVED.**

1.3 **Authorized Claimant.** "Authorized Claimant" means a Class Member, who timely files a W-9 in accordance with the terms of this Agreement, who is therefore entitled to receive a Settlement Check, and does not opt out of the Class.

1.4 **Bar Date.** "Bar Date" means the date by which any Class Member may opt out or object to the settlement, which shall be: (i) thirty (30) days from the date of the Claims Administrator's initial mailing of the Notice (or as otherwise set by the Court); and (ii) an additional thirty (30) days for any Class Member who did not receive the original mailed Notice, and received the Notice by subsequent mailing.

1.5 **RESERVED.**

1.6 **Claimed Net Settlement Fund.** "Claimed Net Settlement Fund" means the amount of the Net Settlement Fund claimed by the Authorized Claimants.

1.7 **Class Counsel.** "Class Counsel" means C.K. Lee, Esq., of Lee Litigation Group, PLLC, 148 West 24th Street, Eighth Floor, New York, New York 10011.

1.8 **Class and Collective Members.** "Class Members" means the Class Representatives and the individuals who are current and former service employees of Defendants, who worked at 44th Street Restaurant, LLC, Bowery Restaurant, LLC, 58th Street Café, LLC, 64 West Restaurant LLC, 65th Street Restaurant, LLC, 76th Street Restaurant, LLC, and Greenwich Street Café, LLC (the "Venues"), who have not executed an Arbitration Agreement as of the date of this Agreement.

1.9 **Class Representatives.** "Class Representatives" means David Rivas, Edgar Montes, Gabriel Pucha, Julio Rodriguez, Porforio Suarez, Zakir Hossain, Carlos Cruz, Erik Medina, Fabio Lozano, Johnny Navarra and Julio Pina.

1.10 **Complaint.** "Complaint" means the Second Amended Complaint filed in this action on September 29, 2020.

1.11 **Days.** "Days" means calendar days, unless otherwise indicated herein.

1.12 **RESERVED.**

1.13 **Effective Date.** "Effective Date" of the settlement means the last of the following dates: (a) the date thirty (30) days after the entry of an order by the Court granting final approval of the Settlement, if there are no appeals; or if there is an appeal of the Court's decision granting final approval, the next business day after all appeals are finally resolved in favor of final approval.

1.14 **Fairness Hearing.** "Fairness Hearing" means the hearing before the Court relating to the Motion for Final Approval.

1.15 **Final Approval Order.** "Final Approval Order" means the Order entered by the Court after the Fairness Hearing, approving the terms of this Agreement, dismissing the Complaint with prejudice, and entering a judgment consistent with the Parties' settlement

terms.

1.16 **Litigation.** "Litigation" means the claims set forth in the Complaint (as defined above), and all claims asserted on behalf of a class and collective of current and former service employees who worked at the Venues, and have not executed an Arbitration Agreement with Defendants.

1.17 **Maximum Settlement Amount.** "Maximum Settlement Amount" means Sixty Thousand Dollars and Zero Cents ($60,000), which is the maximum amount Defendants will pay to settle the Complaint as set forth in this Agreement.

1.18 **Motion for Final Approval.** "Motion for Final Approval" means the Motion for Final Approval of Settlement, Motion for Approval of Class Representative Service Awards and Motion for Attorneys' Fees, and other documents to be filed with the Court seeking final approval of the settlement.

1.19 **Net Settlement Fund.** "Net Settlement Fund" means the remainder of the Qualified Settlement Fund after deductions for: (1) the Settlement Claim Administrator's fees and costs; and (2) Court-approved attorneys' fees and costs for Class Counsel.

1.20 **Notice or Notices.** "Notice" or "Notices" means the Court-approved Notice of Proposed Settlement of Class Action Lawsuit. The Parties shall submit the Notice appended hereto as Exhibit A to the Court for review and approval.

1.21 **Objector.** "Objector" means an individual who timely files an objection to the settlement.

1.22 **Opt-out Statement.** "Opt-out Statement" means a written signed statement that an individual Class Member has decided to opt-out and not be included in this Agreement.

1.23 **Preliminary Approval Order.** "Preliminary Approval Order" means the Order entered by the Court preliminarily approving the terms and conditions of this Agreement, and directing the manner and timing of providing Notices to the Class Members.

1.24 **Qualified Settlement Fund or QSF.** "Qualified Settlement Fund" or "QSF" means the account established by the Settlement Claims Administrator for the settlement funding paid by Defendants. The QSF will be controlled by the Settlement Claims Administrator subject to the terms of this Agreement and the Court's Orders for Preliminary Approval and Final Approval. Interest, if any, earned on the QSF will become part of the Net Settlement Fund.

1.25 **Released Claims.** "Released Claims" mean all claims as set forth in Section 4.1(A) of this Agreement.

1.26 **Defendants.** "Defendants" means The Dinex Group, LLC, 44th Street Restaurant, LLC, Bowery Restaurant, LLC, 58th Street Café, LLC, 64 West Restaurant, LLC, 65th Street Restaurant, LLC, 76th Street Restaurant, LLC, Greenwich Street Café, LLC and Daniel Boulud.

1.27 **Defendants' Counsel.** "Defendants' Counsel" means Felice B. Ekelman, Esq. of Jackson

Lewis P.C., 666 Third Avenue, New York, New York 10017.

**1.28** **Settlement Claims Administrator.** The "Settlement Claims Administrator" will be Rust Consulting, which was selected by the Parties and subject to approval by the Court, whose responsibilities will include to mail the Notices, and IRS Form W-9 to Class Members and administer the calculation, allocation, and distribution of the QSF. The Settlement Claims Administrator's fees shall be borne by the QSF.

**1.29** **Settlement Checks.** "Settlement Checks" means the set of checks issued to Authorized Claimants for their share of the Claimed Net Settlement Fund calculated in accordance with this Agreement.

**2** **INITIAL PROCEDURAL ISSUES**

**2.1** **Binding Agreement.** This Agreement is a binding agreement and contains all material agreed-upon terms for the Parties to seek a full and final settlement of the claims set forth in the Complaint.

**2.2** **Retention and Responsibilities of the Settlement Claims Administrator.**

(A) The Settlement Claims Administrator shall be responsible for: (i) preparing, printing and disseminating to Class Members the Notice, (ii) preparing, printing and disseminating to applicable Class Members the IRS Form W-9, (iii) copying counsel for all Parties on material correspondence; (iv) tracking and promptly furnishing Class Counsel and Defendants' Counsel copies of objections, Opt-out Statements, or other written or electronic communications from Class Members that the Settlement Claims Administrator receives; (v) receiving, retaining and reviewing the IRS Form W-9 submitted by Class Members; (vi) mailing the Settlement Checks to Authorized Claimants with the release language set forth in paragraph 2.9(B) on the back of the check; (vii) preparing and mailing Class Counsel's attorneys' fees, expenses, and costs in accordance with this Agreement and/or any Order of the Court; (viii) administering all tax obligations of Defendants, including issuing the 1099 Forms for all amounts paid to the Authorized Claimants; (ix) responding to inquiries of Class Counsel and Defendants' Counsel consistent with the Settlement Claims Administrator's duties specified herein; (x) maintaining adequate records of its activities, including the dates of the mailing of any Notice and mailing and receipt of IRS Form W-9(s), returned mail and other communications and attempted written, electronic, or telephone communications with Class Members; (xi) providing Class Counsel and Defendants' Counsel with all information, documents, and calculations necessary to determine the Net Settlement Fund and each Authorized Claimant's pro rata share or allocation of the Claimed Net Settlement Fund; (xii) providing a weekly email to Class Counsel and Defendants' Counsel with an update of the number and identity of Authorized Claimants, objections, and Opt-out Statements; (xiii) throughout the period of claims administration, the Settlement Claims Administrator will provide reports to the Parties upon request by either Party, regarding the status of the mailing of the Notices, IRS Form W-9, Authorized Claimants, the claims administration process,

distribution of the Settlement Checks, or any other aspect of the claims administration process, subject to the terms of this Agreement; (xvi) such other tasks as the Parties mutually agree. Other than as set forth herein, the Settlement Claims Administrator shall not initiate communications with any Class Members. The Parties will have equal access to the Settlement Claims Administrator.

No later than twenty-five (25) days prior to the Fairness Hearing, the Settlement Claims Administrator shall certify in writing jointly to Class Counsel and Defendants' Counsel: (i) the number of Authorized Claimants; (ii) a list of all Class Members who filed a timely an objection; and (c) a list of all Class Members who timely filed an Opt-out Statement. Within 15 days following the Court's Order granting final approval of the settlement the Claims Administrator shall send to all Class Members an IRS W-9 form, together with a cover letter instructing Class Members to complete the form in order to receive payment. The content of the cover letter to be proposed by the administrator and agreed upon by the parties.

(B) Defendants agree to reasonably cooperate with the Settlement Claims Administrator and to provide accurate information, to the extent reasonably available, necessary to calculate the Settlement Checks, and reasonably assist the Settlement Claims Administrator in locating Class Members.

**2.3  Preliminary Approval Motion.**

(A) Following the Parties' execution of this Agreement, Class Counsel shall file a Notice for Voluntary Dismissal Without Prejudice on behalf of Barbara Eliaas, Shahab Chowdhury, Jorge Velazquez, Mang Wing Wong, and Sultan Ahmed.

(B) Following the Court's ruling on the Notice for Voluntary Dismissal Without Prejudice, Class Counsel shall file a Motion for Preliminary Approval.

(C) The Motion for Preliminary Approval shall include: (1) the proposed Notice in the form appended hereto as Exhibit A; (2) the proposed Preliminary Approval Order; (3) an executed version of this Agreement; and (4) any other necessary documents, memorandum, affidavits and exhibits for the purposes of certifying, for settlement purposes only, a class of all Class Members under Fed. R. Civ. P. 23, and a collective under 216(b) of the FLSA, and preliminarily approving the settlement. Class Counsel shall submit to Defendants' Counsel for comment and review at least seven (7) days prior to filing the (1) Notice of Motion for Preliminary Approval of the Settlement, (2) Memorandum of Law and all Declaration(s) and other motion papers in support thereof, (3) Proposed Preliminary Approval Order, and (4) other motion papers in support thereof.

(D) In the Motion for Preliminary Approval, Class Counsel will inform the Court of the intended process to obtain the Final Approval Order that will, among other things, seek to: (1) approve the settlement as fair, adequate and reasonable; (2) incorporate the terms of the release of Released Claims as described herein; (3) dismiss the

    Litigation with prejudice; (4) award the Settlement Claims Administrator its fees, and (5) award Class Counsel fees and costs.

 (E) If the Court denies the Preliminary Approval Motion, unless the Parties jointly agree to seek reconsideration of the ruling or to seek Court approval of a renegotiated settlement, the Parties may continue to litigate the action as though this Agreement had never been executed. In that event, Defendants retain the right to contest whether this case should be maintained as a class or collective action, to contest the merits of the claims being asserted against them in the Litigation, whether the disputes are arbitrable, and to assert their defenses. Plaintiffs likewise retain the right to seek certification of a class and/or collective action. Further, no party may use the fact that the Parties agreed to settle the case as evidence of Defendants' liability or the lack thereof. Lastly, if the Preliminary Approval Motion is not approved and/or parties cannot reach new/revised terms to the Agreement, Defendants shall have no obligation to make any payments to any party, Class Member, Authorized Claimant, Class Counsel, and all monies paid by Defendants to the Settlement Administrator shall be returned to Defendants' Counsel, less administration fees incurred up to that point in time, within five (5) days of a Court order denying preliminary approval of the settlement.

 (F) Defendants retain the right to contest the allegations set forth in the Complaint.

 (G) The Parties will work together, diligently and in good faith, to obtain a Preliminary Approval Order, Final Approval Order, and dismissal expeditiously.

**2.4** **Notice and Claims Forms to Class Members**

 (A) Within fifteen (15) days of the issuance of the Preliminary Approval Order, Defendants will provide the Settlement Claims Administrator, in electronic form, the following information for all Class Members: name, last known address, social security number, and employment start and end dates, as that information exists on file with Defendants. Such information provided to the Settlement Claims Administrator, with the exception of social security numbers, will also be provided to Class Counsel.

 (B) Within fifteen (15) days after Defendants provide the information set forth in Section 2.4(A) to the Settlement Claims Administrator, the Settlement Claims Administrator, utilizing the addresses provided by Defendants, will mail to all Class Members, at the addresses provided by Defendants, via First Class United States Mail, postage prepaid, the Court–approved Notice.

 (C) The Settlement Claims Administrator will take all reasonable steps to obtain the correct address of those Class Members for whom a Notice is returned by the post office as undeliverable and shall automatically attempt one skip trace re-mailing per Class Member. The Settlement Claims Administrator will notify Class Counsel and Defendants' Counsel of any Notice, sent to a Class Member that is returned as undeliverable after the first mailing, as well as any such Notice, returned as

        undeliverable after any subsequent mailing(s) as set forth in this Agreement. Nothing herein precludes the Settlement Claims Administrator from re-mailing a Notice to a Class Member in the event an updated address is located after a first re-mailing.

- (D) Within 15 days following the Court's Order granting final approval of the settlement the Claims Administrator shall send to all Class Members an IRS W-9, together with a cover letter instructing Class Members to complete the form in order to receive payment. The content of the cover letter to be proposed by the administrator and agreed upon by the parties.

- (E) Class Members that timely return their IRS Form W-9 will be deemed Authorized Claimants. To be effective for the purposes of becoming an Authorized Claimant, an IRS Form W-9 must be post-marked, e-mailed or faxed to the Settlement Claims Administrator within 30 days of their mailing date. To the extent that the envelope does not contain a post-mark, the date that the Class Administrator stamps the envelope or IRS Form W-9 "received" shall apply.

## 2.5 Class Member Opt-outs.

- (A) Class Members who choose to opt-out of the settlement as set forth in this Agreement must mail to the Claims Administrator an Opt-out Statement via First Class United States Mail, postage prepaid. Such Opt-out Statement must state that the Class Member is opting out of the settlement, and include his or her name, job title, address, and telephone number and must also state the following words, "I opt out from the settlement in *Eliaas v. The Dinex Group, LLC*, Case No. 20-cv-03117" in order to be valid. To be effective, an Opt-out Statement must be postmarked within (i) thirty (30) days from the date of the Claims Administrator's initial mailing of the Notice; or (ii) an additional thirty (30) days later for any Class Member who did not receive the Notice within the original thirty (30) days from mailing allotted due to such factors as change of address, military service, hospitalization, or other extraordinary circumstances.

- (B) The end of the time-period for a Class Member to opt-out of the settlement ("Opt-out Period") shall be (i) thirty (30) days from the date of the Claims Administrator's initial mailing of the Notice; or (ii) an additional thirty (30) days later for any Class Member who did not receive the Notice within the original thirty (30) days from mailing allotted due to such factors as change of address, military service, hospitalization, or other extraordinary circumstances.

- (C) The Settlement Claims Administrator will, within ten (10) days after the last day on which it mails the last Notice to any Class Member, notify Class Counsel and Defendants' Counsel in writing by email of the precise date of the end of the Opt-out Period.

- (D) The Settlement Claims Administrator shall stamp the postmark date on the original of each Opt-out Statement that it receives and shall serve copies of each Opt-out

Statement on Class Counsel and Defendants' Counsel not later than three (3) business days after receipt thereof. Class Counsel shall file with the Clerk of Court stamped copies of all Opt-out Statements with the Motion for Final Approval (as defined below). The Settlement Claims Administrator will, within 24 hours after the of the end of the Opt-out Period, send a final list of all Opt-out Statements it received to Class Counsel and Defendants' Counsel along with all Opt-out Statements and originals of all envelopes accompanying same. The Settlement Claims Administrator will retain the stamped originals of all Opt-out Statements and originals of all envelopes accompanying Opt-out Statements in its files until such time as the Settlement Claims Administrator is relieved of its duties and responsibilities under this Agreement.

(E) Any Class Member who does not properly submit an Opt-out Statement pursuant to this Agreement, will be deemed to have accepted the settlement and the terms of this Agreement, and will, by means of the Final Approval Order, release all claims as set forth therein.

2.6 **Defendants' Ability to Revoke.** Defendants have the right to revoke this Agreement if: any of the Class Representatives as defined Section 1.9 timely file an Opt-out Statement. If Defendants wish to exercise this right, it must do so by e-mail to Class Counsel no later than ten (10) days after the end of the Opt-out Period. If Defendants revoke this Agreement, (1) the class and collective certified for purposes of settlement shall be decertified, (2) Defendants may seek to enforce its Agreements to Arbitrate with individual Claimants and/or Class Members, if any, (3) Defendants may contest whether this Litigation should be maintained as a class action or collective action, (4) Defendants may contest the merits of the claims being asserted in the Litigation, and (5) the Maximum Settlement Amount, less any administrative fees incurred by the Settlement Claims Administrator, shall be returned to Defendants within five (5) days of Defendants exercising their right to revoke.

2.7 **Objections to Settlement.**

(A) Objectors who wish to present objections to the proposed settlement at the Fairness Hearing must first do so in writing. To be considered, such statement must be mailed to the Settlement Claims Administrator via First-Class United States Mail, postage prepaid, and be received by the Settlement Claims Administrator by a date certain no more than thirty (30) days after the Settlement Claims Administrator mails a Notice to such Objector, unless a new mailing is sent as set forth in Section 2.4(C), at which time the date until which that Objector may opt-out controls. The statement must include all reasons for the objection and any reasons not included in the statement will not be considered. The statement must also include the name, job title, address, and telephone numbers for the Class Member making the objection. It must also contain the words, "I object to the settlement in *Eliaas v. The Dinex Group, LLC*, Case No. 20-cv-03117." The Settlement Claims Administrator will stamp the date received on the original and send copies of each objection to Class Counsel and Defendants' Counsel by email no later than three (3) days after receipt thereof. Class Counsel shall file the date-stamped copies of all objections with the Court with the Motion for Final Approval.

(B) An Objector who wishes to appear at the Fairness Hearing must state his or her intention to do so in writing on his or her written objections at the time he or she submits same to the Claims Administrator. An Objector may withdraw his or her objections at any time. No Objector may present an objection at the Fairness Hearing based on a reason not stated in his or her written objections. A Class Member who has submitted an Opt-out Statement may not submit objections to the Settlement, and an Opt-out Statement will take precedence over a submitted objection, unless directed otherwise by the Court.

(C) The Parties may file with the Court written responses to any filed objections before the Fairness Hearing.

**2.8 Fairness Hearing and Motion for Final Approval and Dismissal.**

(A) After the Bar Date, consistent with the Court's ruling on the Motion for Preliminary Approval, Class Counsel will prepare the Motion for Final Approval. Defendants shall prepare the Final Approval Order and will provide a draft to Class Counsel for their review and approval prior to filing. Class Counsel shall submit to Defendants' Counsel for comment and review at least seven (7) days prior to filing the (1) Notice of Motion for Final Approval of the Settlement, (2) Memorandum of Law and all Declaration(s) and other motion papers in support thereof. For settlement purposes only, Defendants will not oppose the Motion for Final Approval, including any application for attorneys' fees or service awards.

(B) At the Fairness Hearing and in the Motion for Final Approval, the Parties will request that the Court, among other things: (1) certify the Class as defined in the Settlement Agreement for purposes of settlement; (2) approve the settlement and Settlement Agreement as fair, reasonable, adequate, and binding on all Class Members who have not timely file an Opt-out Statement; (3) order the Settlement Claims Administrator to distribute Settlement Checks from the Net Settlement Fund to Authorized Claimants to be paid as described in this Agreement; (4) order the attorneys' fees and costs to be paid to Class Counsel; (5) order the dismissal with prejudice of all claims asserted in the Litigation and the claims of all Class Members who did not timely file an Opt-out Statement; and (6) retain jurisdiction as necessary for the purpose of filing consent-to-join forms from the Authorized Claimants as set forth in their Settlement Checks and other relief.

(C) If the Court fails to enter a Final Approval Order, the Parties will endeavor to reach a new settlement agreement to resolve this matter. If the Court fails to enter the Final Approval Order in accordance with this Agreement, or if the Final Approval Order is set aside by appeal, then: (1) the class and the collective class, certified for purposes of settlement shall be decertified, and (2) Defendants may contest whether this Litigation should be maintained as a class and/or collective action.

(D) If the Parties do not jointly agree to seek reconsideration or appellate review of the decision denying entry of the Final Approval Order and/or a mutually agreeable settlement agreement cannot be reached by the parties, the Settlement Fund shall

    be returned to Defendants' Counsel, less administration fees incurred up to that point in time, within five (5) days of a court order denying final approval of the settlement.

 (E) To the extent a resolution is not reached after further discussions, the Settlement Claims Administrator will provide notice to Class Members that the Agreement did not receive Final Approval and that, as a result, no payments will be made to Class and Collective Members under the Agreement. The content of such notice shall be agreed to by the Parties and such notice shall be mailed by the Settlement Claims Administrator via First Class United States Mail, postage prepaid, to the addresses used by the Settlement Claims Administrator in mailing the most recent copy of the Notice to respective Class Members.

 (F) The Final Approval Order will direct the Settlement Claims Administrator to (1) provide verification to Class Counsel and Defendants' Counsel that it has distributed the Settlement Checks to Authorized Claimants, (2) retain copies of all of the endorsed Settlement Checks with releases, and (3) provide Defendants' Counsel with copies of the endorsed Settlement Checks in accordance with this Agreement and the Court's Final Approval Order.

**2.9 Releases and Consents to Join.**

 (A) Authorized Claimants will be issued a Settlement Check by the Settlement Claims Administrator from the Net Settlement Fund in accordance with the Final Approval Order.

 (B) All Settlement Checks shall contain, on the back of the check, the following limited endorsement:

  **"CONSENT TO JOIN AND FINAL RELEASE OF CLAIMS:**

  **By endorsing this *check, I consent to join the FLSA collective action and NYLL class action styled Eliaas v. The Dinex Group, LLC, Case No. 20-cv-03117, against Defendants and release Defendants from all wage and hour claims under the New York Labor Law and Fair Labor Standards Act brought* or which could have been brought in the Litigation, including but not limited to minimum wage, overtime and misappropriated gratuity claims and claims for penalties under NYLL § 195 arising on or before [*date of preliminary court approval of settlement*]."**

  Any modification or amendment of the above-language by the Authorized Claimant at Defendants' discretion may not be accepted, and may void the Settlement Check.

 (C) The Settlement Claims Administrator will mail an IRS Form W-9 to Class Members after the Court issues an Order granting final approval. Class Members and Class Counsel will have sixty (60) days to return a completed IRS Form W-9 to the Settlement Claims Administrator. The Settlement Claims Administrator shall mail the Settlement Checks to all Class Members who have submitted a completed

        IRS Form W-9, fifteen (15) days after the expiration of the sixty (60) day period described herein, and all other conditions precedent are met.

   (D)    Within sixty (60) days after the date Settlement Checks are mailed, the Settlement Claims Administrator shall provide Defendants with a signed copy of the endorsed Settlement Checks.

## 3 SETTLEMENT TERMS

### 3.1 Settlement Amount.

(A) Simultaneous with the execution of this Agreement, Defendants shall cause an amount equal to the Maximum Settlement Amount, and no more, to be deposited into the QSF. Such amount shall fully resolve and satisfy any claim for attorneys' fees and costs approved by the Court, any and all amounts to be paid to Authorized Claimants, any Court-approved Service Awards, any fees and costs associated with investing and liquidating the Qualified Settlement Fund, and the Settlement Claims Administrator's fees and costs. In no event shall such funding exceed the Maximum Settlement Amount.

(B) The Settlement Claims Administrator shall deposit the funding in Section 3.1(A) and be held by the Settlement Claims Administrator in escrow.

(C) Authorized Claimants will have sixty (60) days from the date of the mailing of the Settlement Checks to cash their Settlement Checks.

(D) Any uncashed Settlement Checks after such sixty (60) days has expired shall revert to Defendants. Payment to Defendants shall be issued One Hundred (100) days after the date the Settlement Checks are originally mailed to Authorized Claimants by the Settlement Claims Administrator.

### 3.2 Settlement Amounts Payable as Attorneys' Fees and Costs.

(A) At the Fairness Hearing and in the Motion for Final Approval, Class Counsel will petition the Court for an award of attorneys' fees of no more than 33% of the Maximum Settlement Amount, net of expenses, service awards and administration fees, and for reimbursement of their actual litigation costs and expenses to be paid from the QSF. For settlement purposes only, Defendants will not oppose such applications, or any appeal as to the denial of such applications. After depositing the funds set forth in Section 3.1(A) as provided for herein, Defendants shall have no additional liability for Class Counsel's attorneys' fees and costs.

(B) The outcome of any proceeding related to Class Counsel's application for attorneys' fees and costs shall not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Final Approval. Any fees or costs sought by Class Counsel but not approved by the Court shall revert to the QSF and will be distributed pro-rata to Authorized Claimants.

**3.3** **Service Awards**

(A) In return for services rendered to the Class Members, at the Fairness Hearing, David Rivas, Edgar Montes, Gabriel Pucha, Julio Rodriguez, Porforio Suarez, Zakir Hossain, Carlos Cruz, Erik Medina, Fabio Lozano, Johnny Navarra and Julio Pina will apply to the Court to receive no more than $2,200 (or, $200.00 each) as Service Awards from the QSF. For settlement purposes only, Defendants shall not oppose such application, or an appeal as to the denial of such application.

(B) The outcome of the Court's ruling on the application for the Service Awards will not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Final Approval. Should all or part of any Service Awards sought not be approved by the Court, the sum shall revert to the QSF and will be distributed pro-rata to Authorized Claimants.

**3.4** **Claimed Net Settlement Fund and Allocation to Class Members.**

(A) The allocation to Authorized Claimants for Settlement Checks will be made from the Claimed Net Settlement Fund.

(B) An Authorized Claimants proportionate share of the Claimed Net Settlement Fund will be determined by the Settlement Claims Administrator based on weeks worked within the Class Period.

(C) The Claims Administrator shall mail to all Authorized Claimants their proportionate share of the Claimed Net Settlement Fund as set forth in this Agreement.

(D) All payments to Authorized Claimants made pursuant to this Agreement shall be deemed to be paid to such Authorized Claimants solely in the year in which such payments actually are received by the Authorized Claimant.

**3.5** **Tax Characterization.**

(A) Settlement Checks paid to Authorized Claimants will be considered 1099 non-wage income.

(B) The Settlement Claims Administrator is responsible for issuing and filing appropriate forms associated with payments of any amounts to Class Members, including, but not limited to, issuing the 1099 Forms for all amounts paid to the Class Members that are cashed.

**4** **RELEASE**

**4.1** **Release of Claims.**

(A) By operation of the entry of the Final Approval Order, except as to such rights or claims as may be created by this Agreement, each individual Class Member who

        does not file an Opt-out Statement as set forth in this Agreement forever and fully releases THE DINEX GROUP, LLC, 44TH STREET RESTAURANT, LLC, BOWERY RESTAURANT, LLC, 58TH STREET CAFÉ, LLC, 64 WEST RESTAURANT, LLC, 65TH STREET RESTAURANT, LLC, 76TH STREET RESTAURANT, LLC, GREENWICH STREET CAFÉ, LLC and DANIEL BOULUD, as well as their owners, stockholders, predecessors, successors, assigns, agents, directors, officers, employees, representatives, attorneys, insurers, reinsures, parents, subsidiaries, affiliates, benefit plans, plan fiduciaries, and/or administrators, and all persons acting by, through, under or in concert with any of them ("Releasees"), from all wage and hour claims that could have been asserted under federal or state laws by and on behalf of the Class Members in the Litigation as of the date the Court issues an Order preliminarily approving the Parties' settlement. The Released Claims include all claims under federal or New York State laws for regular or overtime wages, spread of hours, any related wage and hour claims, all claims for gratuities under NYLL § 196-d, NYLL § 195 penalties, all related derivative benefit claims (both ERISA and non-ERISA benefits). Specifically, the Released Claims include any and all claims under the NYLL, Article 6, §191 (Frequency of payments); §192 (Cash payment of wages); §193 (Deductions from wages); §195 (Notice and record-keeping requirements); §196-d (Gratuities); §198-c (Benefits or wage supplements); §198-d (Posting regulations on illegal wage deductions) and any claim under Article 19, § 605 et seq. of the NYLL for a claim of minimum wage or overtime and other provisions including the supporting state regulations and New York Minimum Wage Orders, 12 NYCRR §§ 146, et seq. The Released Claims further include any and all claims under the FLSA, 29 U.S.C.S. §§ 201 et seq. for minimum wage, overtime, retaliation, and supporting federal regulations, interest on such claims, and attorneys' fees and costs related to such claims through the date this Settlement Agreement and Release is executed by all Parties.

(B)    Except as provided in this Agreement, the Class Representatives, on behalf of the Class Members, hereby irrevocably and unconditionally release, acquit, and forever discharge any claim that he, she or they may have against Defendants for attorneys' fees or costs associated with Class Counsel's representation of the Class Members herein. Any fee payments approved by the Court will be the full, final and complete payment of all attorneys' fees and costs associated with Class Counsel's representation in the Litigation.

(C)    Notwithstanding Section 4.1(A) or anything else to the contrary, no Class Member will release any FLSA Claims if such Class Member does not become an Authorized Claimant. To the extent a Class Member does not submit an Opt-out Statement as provided for in this Agreement, such Class Member shall be subject to the release set forth in Section 4.1(A), but shall not release any FLSA Claims.

**4.2    Denial of Liability & Confidentiality.**

(A)    Defendants have agreed to the terms of this Agreement without in any way acknowledging any fault or liability, and with the understanding that terms have

been reached because this settlement will avoid the further expense and disruption of Defendants' business due to the pendency and expense of litigation. Nothing in this Agreement shall be deemed or used as an admission of liability by Defendants or as an admission that a class should be certified for any purpose other than settlement purposes.

(B) Class Counsel and Defense Counsel agree that they will not issue, send, or post, or cause to be issued, sent, or posted, any press release, posting, e-mail, or other verbal or written communication to any electronic, print, or digital media, blog, or social networking site (including, but not limited to, Facebook, LinkedIn, Instagram, and Twitter) regarding the Parties' settlement discussions and/or the facts and events leading up to the Agreement. If specifically asked about the status of the Litigation or this Agreement, Class Counsel and Defendants' Counsel agree that they will respond solely by stating that the Parties' dispute has been amicably resolved and that they are not permitted to comment any further. Notwithstanding the terms of this 4.2(B), Class Counsel and Defense Counsel shall be free to make whatever disclosures relating to the Agreement that they deem appropriate to their clients' other attorneys, financial advisors, and tax advisors, provided that those disclosures are truthful and no derogatory statements are made about Class Counsel, Defense Counsel, the Class Representatives, and/or Defendants. Nothing herein shall prevent or limit Class Counsel or the Settlement Claims Administrator from communicating with Class Members. This provision is enforceable to the extent it does not conflict with Rule 5.6(a)(2) of the New York Rules of Professional Conduct, or Disciplinary Rule (DR) 2-108(B) of the ABA Model Code of Professional Responsibility, or any other applicable rule governing ethical standards of the practice of law.

(C) The Class Representatives and Class Counsel agree that the terms of the settlement will be kept confidential up until the filing of the Motion for Preliminary Approval. The Class Representatives further agree not to make disparaging comments related to Defendants except as may be required by law or protected by law.

## 5   INTERPRETATION AND ENFORCEMENT

**5.1   Cooperation Between the Parties; Further Acts.** The Parties shall reasonably cooperate with each other and shall use their reasonable best efforts to obtain the Court's approval of this Agreement and all of its terms. Each party, upon the request of any other party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

**5.2   No Assignment.** Class Counsel and Class Representatives, on their own behalf and on behalf of the Class Members, represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Complaint, or any related action.

**5.3   RESERVED**

5.4 **Binding Effect.** This Agreement shall be binding upon the Parties and, with respect to the Class Representatives and all Class Members, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys and assigns.

5.5 **Arm's Length Transaction; Materiality of Terms.** The Parties have negotiated all the terms and conditions of this Agreement at arms' length. All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement, unless otherwise expressly stated.

5.6 **Captions.** The captions or headings of the Sections and Paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

5.7 **Construction.** The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties. Each party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

5.8 **Blue Penciling.** If any provision of this Agreement is held by a court of competent jurisdiction to be void, voidable, unlawful or unenforceable, the remaining portions of this Agreement will remain in full force and effect.

5.9 **Governing Law.** This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of New York, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

5.10 **Continuing Jurisdiction.** The Court shall retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated thereby. The Court shall not have jurisdiction or authority to modify the terms of the Agreement or to increase Defendants' payment obligations hereunder.

5.11 **Waivers, etc. to Be in Writing.** No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval. Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

5.12 **When Agreement Becomes Effective; Counterparts.** This Agreement shall become effective upon its execution. The Parties may execute this Agreement in counterparts, and

execution in counterparts shall have the same force and effect as if all Parties had signed the same instrument.

5.13 **Binding Authority of Counsel.** C.K. Lee, Esq., of Lee Litigation Group, PLLC hereby represent that he and his firm are fully authorized to bind the Plaintiffs to the terms and conditions hereof and that they have retainer agreements and/or authorizations to execute this Agreement on their behalf. Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.

5.14 **Event of Non-Payment.** In the event that Defendants do not fully fund the Settlement Amount, the settlement shall be deemed null and void and no release under this Agreement shall be effective.

5.15 **CAFA Notice.** Defendants shall be responsible for timely filing the required notices to the relevant attorneys general as required under the Class Action Fairness Act, as amended.

On behalf of all Plaintiffs, Opt-in Plaintiffs, Collective Members and Class Members

_____     _____
Date                                                                  C.K. Lee

The Dinex Group, LLC, on behalf of all Defendants

3/4/2021                                                          By: _____
Date                                                                  Its: Brian Diamond